**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Lawrence Eugene BEEMAN, Defendant-Appellant.**

**No. 75–351.**

Colorado Court of Appeals, Div. I.

March 11, 1976.

Rehearing Denied April 1, 1976.

Certiorari Granted June 21, 1976.

**728**

J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Deborah L. Bianco, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Goodbar, Barash & Fischer, James Robert Barash, Colorado Springs, for defendant-appellant.

KELLY, Judge.

The defendant appeals his convictions of rape and deviate sexual intercourse by force in violation of what are now §§ 18-3-401 and 18-3-403, C.R.S.1973. He contends that the trial court should have granted his motion for a mistrial because of the bias of a juror; that the trial court erred in rejecting the testimony of his expert witness; that the district attorney was guilty of prosecutorial misconduct; that exculpatory evidence was withheld by prosecuting officials; and that the cumulative effect of irregularities during the trial deprived him of a fair trial. We affirm.

The record shows that the defendant and the complaining witness had known each other casually prior to August 3, 1974, the date of the offense, having become acquainted while both were employed by a food distribution company. At approximately 12:30 a. m. on August 3, the defendant telephoned the complaining witness at her home and asked to come over to see her. She testified that, although she had previously refused to accompany the defendant on a proposed trip to Acapulco, nevertheless, the defendant wanted to talk to her about the trip.

At approximately 1:00 a. m., the defendant arrived at the complainant's housetrailer, bringing with him a bottle of wine. The complainant and the defendant agreed

that she was wearing a floor-length, cotton housedress when she answered the door. Although she said that she also had on a bra and underpants, the defendant testified that she was without underwear.

The two visited for approximately forty-five minutes, during which the defendant was drinking wine. Although the complaining witness testified that she drank only water, the defendant testified that they both drank some wine. Also, a detective who investigated the scene testified that he had found an empty wine bottle and two glasses, both of which smelled as if they had previously contained an alcoholic beverage.

According to the complainant's testimony, her insistence that the defendant leave because she had to work the following day provoked the defendant to remove from his pocket a pearl-handled knife with which he cut the front of her housedress. The dress was further ripped during an ensuing struggle. When the complainant screamed, awakening one of her neighbors, the defendant held the knife to her throat and threatened to kill her, according to her testimony. The defendant then took her to the bedroom when he forced her to perform fellatio and to submit to cunnilingus and sexual intercourse.

The defendant's theory of consent was reflected in his testimony. He conceded the sexual acts, but denied that force had been used. The complainant's housedress, he said, had been accidentally ripped during their playful, pre-sexual scuffling, and her screams had been expressions of pleasure during the intercourse.

The defendant did not deny that the complaining witness had refused his invitation to go to Acapulco. He said, however, that after the intercourse, when he told her that he had only asked her to go on this trip because his wife could not accompany him, the complainant, who had not previously known he was married, became hysterical. He was forced, he said, to slap her face to bring her out of her hysteria.

After the incident, the complainant drove to the home of friends, where she telephoned the police. Some time after the arrival of a sheriff's officer, the complainant was taken to a hospital and was examined by a physician, whose examination confirmed that sexual intercourse had occurred. The complainant's friends, the sheriff's officer, and the doctor testified that she had been crying, was very upset, and that she had marks on the side of her neck, under her chin, and a scratch on her shoulder.

I.

Early in the trial, but after the jury had heard the complainant's testimony of her acquaintance with the defendant through their mutual employment by the food distribution company, and her testimony that defendant had accosted her with a pearl-handled knife, the bailiff was advised by one of the jurors that she believed she had previously known the defendant. The defendant promptly moved for a mistrial, and the court, pursuant to § 16–10–103(3), C.R.S.1973, instructed the bailiff to escort the juror to chambers for an in camera inquiry.

There, the juror, in response to questioning by the court, explained that her daughter had, at some previous time, received a call from a person the juror believed to be the defendant concerning the purchase of a home-freezer food plan. The defendant, during his visit to the daughter's home, had been more interested in discussing politics than in selling the food plan, and his doleful predictions for the future of the world had upset the daughter, who was then pregnant. Although it was clear that no sexual improprieties were involved, the juror, perceiving the salesman's conduct to be inappropriate under the circumstances, had telephoned his employer to complain of his behavior.

The juror also advised the court in camera that her daughter had once owned a pearl-handled knife which generally fitted the description of the one carried by the

defendant, and which the juror, while at her daughter's home, had taken away from her grandson, and had subsequently been unable to find. The juror conjectured that this might be the knife used by the defendant in this case.

Upon close inquiry by both the court and defense counsel, however, the juror was firm in her assertions that these matters would not affect her judgment in this case. Among other responses, the juror stated that:

"[The defendant] is not being tried on what happened in my daughter's house at all."

"I would not want to unfairly judge anyone [.]"

"I think I would completely try him on this offense."

"But, but—now let's discuss this. I only mentioned the knife. I just mentioned it to you, but I'm not—I think I would be open minded enough to try this man in my mind on the crime that he is being accused of, where he raped the girl. This is what I would try him on; not on the fact that maybe that was the knife like was in that home."

"No, the reason I brought up the knife, I was trying to convince myself whether he is the same man or not. If he had the knife I would know in my heart he was the same man at my daughter's, but I would still try him on the charges that he is being charged with. I would want to be very, very sure."

The juror assured the court that she had not discussed these matters with the other jurors and that she would not do so. The trial court admonished her to put these matters out of her mind, and denied defendant's motion for a mistrial.

The defendant now asks this court to rule that this juror was prejudiced, as a matter of law. This we cannot do.

"The elements entering into the question of when a trial court is justified in declaring a mistrial are not so specific and circumscribed that the issue may be de-cided as a matter of law nor are there established standards in adequate detail to enable the court so to do. Nor do the decisions of the appellate courts of this jurisdiction, nor of others, require such exacting fineness, they being content to leave the matter to the sound discretion of the trial court." *Brown v. People*, 132 Colo. 561, 291 P.2d 680.

Such discretionary rulings of the trial court will not be overturned on review in the absence of a clear showing of abuse. *See Collins v. Burns*, 16 Colo. 7, 26 P. 145; *Kelly v. People*, 121 Colo. 243, 215 P.2d 336.

■ In Colorado, a prospective juror is not disqualified to serve because of a previously formed or expressed opinion concerning the guilt or innocence of a defendant, if the trial court is satisfied, after an independent examination of the prospective juror, that he will render an impartial verdict. *People v. Buckner*, 180 Colo. 65, 504 P.2d 669; § 16–10–103(1)(j), C.R.S.1973; Crim.P. 24(b)(1)(X); *see also Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L. Ed.2d 751. These same statutory standards, applicable to challenges for cause, apply where, as here, the grounds for disqualification are first discovered after commencement of the trial. *Cf. Hopkins v. People*, 89 Colo. 296, 1 P.2d 937; and *see United States v. Rowell*, 512 F.2d 766 (8th Cir.).

■ The determination of juror bias is a question of fact, *see Leick v. People,* 136 Colo. 535, 322 P.2d 674, and impartiality is a state of mind. As evidence of state of mind, a juror's assertions of impartiality may properly be considered and weighed by the trial court in determining the factual question. *See People v. Cole*, 54 Ill.2d 401, 298 N.E.2d 705. As the court said in *Leick v. People, supra*:

"To believe or not to believe becomes his problem; if the trial judge believes, may we say he erred in believing? May we supersede his determination of fact in this respect?

"The proper exercise of this discretion requires the trial judge to determine the competence of the juror to sit in judgment in the case. He hears the questions put to the juror and the answers given, observes the juror's demeanor while being interrogated, and discerns through the use of his eyes, ears and intelligence wherein truth and credit should be given. The reviewing court does not have the benefit of this personal observation which is so important in judging the credibility of the juror."

◼ Here, the attenuated relationship which the juror had with the defendant is not such as to require us to say that the trial court could not believe her statements that she would try the defendant on the evidence presented in this case. Nor are we compelled to say, under the circumstances here, that the juror was prejudiced as a matter of law. *See United States v. Kelton,* 518 F.2d 531 (8th Cir.); *People v. Cole, supra.*

## II.

The defendant proffered the testimony of a forensic psychologist for the purpose of discrediting the victim's testimony and to establish her motive for accusing the defendant of the crimes charged. The psychologist's testimony was fully developed as an offer of proof during an in camera hearing, after which the trial court excluded the testimony. The defendant assigns error to that ruling. We find no error.

◼ Unquestionably, the credibility of a prosecution witness may be attacked for the purpose of showing motive, bias, or animus toward the accused. *People v. Taylor,* Colo., 545 P.2d 703 (announced January 26, 1976). "Within broad limits, any evidence tending to show bias or prejudice, or to throw light upon the inclinations of witnesses, may be permitted." *People v. Taylor, supra; People v. Simmons,* 182 Colo. 350, 513 P.2d 193. Nor is it necessary to the reception of extrinsic evidence of bias that a foundation be laid by cross-

examination of the witness whose credibility is subject to challenge. *People v. Taylor, supra; Angelopoulos v. Wise,* 133 Colo. 133, 293 P.2d 294; *Kidd v. People,* 97 Colo. 480, 51 P.2d 1020.

◼ Nevertheless, as the court stated in *Taylor, supra:*

"The trial court must . . . exercise its sound discretion to preclude inquiries that have no probative force, or are irrelevant (*People v. Simmons, supra; Johnson v. People,* 171 Colo. 505, 468 P.2d 745); or which would have little effect on the witness' credibility but would substantially impugn his moral character. *People v. Couch,* 179 Colo. 324, 500 P.2d 967."

The testimony of an expert witness, proffered for the purpose of showing the bias, prejudice or animus of the victim of an offense, is as subject to the requirement of relevance and probative force as the testimony of any other witness. *See People v. Manier,* 184 Colo. 44, 518 P.2d 811; and *cf. Penney v. People,* 146 Colo. 95, 360 P.2d 671.

Here, the psychologist's testimony was apparently offered to show that the complainant's past relationship with men had been so unsatisfactory that she was prone to sexual fantasies about rape and would be likely to make false rape accusations. Although the expert witness had interviewed the complainant, and had concluded that her past relationships with men, including her former husband, had not been "good," the psychologist testified only that the complainant's experience *could* have resulted in anger toward men; that she *might* not be able to "relate to" men; that she was nervous during the interview; that she had made "vague comments" about "men in general," and was familiar with a slang expression for oral intercourse.

◼ The ultimate question, whether, in the opinion of the expert, the complainant would be likely to falsify an accusation of rape, was never asked of the psychologist

and the offer of proof therefore failed to meet the requirement that the testimony have probative force. Hence, its admission was properly refused, and we need not decide whether the proffered testimony would have been relevant under the "reasonable basis in fact" test of *People v. Simbolo*, Colo., 532 P.2d 962.

### III.

The defendant's assertion of prosecutorial misconduct is two-fold. First, he contends that, since identity was not in issue, the district attorney improperly offered, and the trial court erroneously admitted, a photograph of the defendant.

A photograph is ordinarily admissible, even if cumulative, if it depicts what a witness can describe in words. *See Hampton v. People*, 171 Colo. 153, 465 P.2d 394. Since it was made clear to the jury that the picture was taken at the time of defendant's arrest for this offense, its admission does not fall within the prohibition of *People v. Bugarin*, 181 Colo. 62, 507 P.2d 875. Moreover, the defendant does not urge that the photograph inaccurately depicted his appearance at the time of the events in question, and thus, we fail to perceive how its admission was prejudicial to him. *See Stout v. People*, 171 Colo. 142, 464 P.2d 872.

Second, the defendant argues that the district attorney was guilty of misconduct during closing argument, when he said:

"Now, it's time for this community to have some due process of law. You twelve people represent 270,000 residents of El Paso County, and in your decision you are going to decide whether this community is going to tolerate what happened to [complainant]."

This is virtually the only portion of the district attorney's closing argument included in the record before us, and none of the preceding arguments of counsel appear therein.

Although the record reflects that defense counsel objected at the time the comment was made, and that there was a conference between counsel and the court at the bench, the defense motion for mistrial was not made until after the jury had retired, and there is no indication that the court was requested, at any time, to instruct the jury to disregard the district attorney's argument. The trial court did, however, during the argument of defendant's motion for mistrial, disapprove of the comment, but concluded that it was not so inflammatory as to require a mistrial.

On the record before us, we are constrained to the same conclusion. The granting or denial of a motion for mistrial based on the scope of final argument lies within the discretion of the trial court. *See People v. Pesis*, Colo., 536 P.2d 824. The superior position of the trial court in evaluating the effect of any such irregularities on the jury's determination is critical, *see People v. Elliston*, 181 Colo. 118, 508 P.2d 379, and, based on the record before us, we cannot say that the defendant has sustained his burden of showing reversible error. *See Gottfried v. People*, 158 Colo. 510, 408 P.2d 431; *Bueno v. People*, 158 Colo. 338, 406 P.2d 793.

Nor may the defendant derive comfort from the trial court's failure to admonish the jury to disregard the district attorney's argument. The defendant made no request for such an instruction, and the jury was informed in the general charge that it was to determine the facts from the evidence in the case, and that the arguments of counsel were not to be considered in reaching its verdict. It must be presumed that the jury heeded these instructions. *People v. Knapp*, 180 Colo. 280, 505 P.2d 7; *Hafer v. People*, 177 Colo. 52, 492 P.2d 847.

### IV.

The defendant urges that he is entitled to a new trial or to discharge because certain evidence, which he contends was wrongfully suppressed by the People, tended to negate his guilt and must be considered as "newly discovered." The evidence

at issue consisted of photographs taken of the victim's bedroom after the crimes were committed, and a document called a "crime scene analysis" prepared by a Deputy Spengler.

According to the argument, the photographs tend to exonerate the defendant because they show a nightgown lying on top of the victim's housedress on the bedroom floor beside the bed. The defendant hypothesizes that the photograph shows that the nightgown was removed after the housedress, thus supporting his theory of consensual intercourse.

 Such an inference might be warranted, and might indeed support the theory of consensual intercourse, had either the defendant or the complainant testified that she was wearing the nightgown under the housedress. However, since complainant testified she was wearing bra and underpants under the housedress, and the defendant said she was wearing nothing but the housedress, the photographs could have no probative value except to discredit the testimony of both the victim and the defendant. And, even assuming this evidence was newly discovered, it is settled that impeaching evidence is not sufficient basis for granting a new trial on the ground of newly discovered evidence. *See People v. Gallegos*, Colo., 528 P.2d 229.

Moreover, whether these photographs constituted "newly discovered evidence" is susceptible to doubt. These photographs were taken by Deputy Spengler in connection with his "crime scene analysis" and Spengler was listed on the information as a witness for the People. Yet defense counsel conceded that he had made no effort, prior to trial, to interview this witness, and the People did not call Spengler as a witness at the trial. Nevertheless, the evidence, if it had been diligently sought, was available to the defendant, and cannot qualify as "newly discovered" so as to justify the granting of a new trial on this ground. *See People v. Mays,* Colo., 525 P.2d 1165.

 Neither can we say that the "crime scene analysis" was either "suppressed" by the People or that it would have been exculpatory. There is nothing in the record to indicate that the district attorney was aware of the existence of such a "crime scene analysis" or that its existence was intentionally secreted from the defendant by any law enforcement official. Although the whereabouts of this report is now unknown, its existence, it appears, could have been readily discovered by the defendant through the simple expedient of interviewing the witnesses listed on the information. Under these circumstances, a new trial was not warranted. *See People v. Scheidt,* Colo., 528 P.2d 232.

The defendant argues, nevertheless, that there should be a retrial of the issues, since Spengler's testimony would discredit the victim by showing that she told him she had been drinking wine that evening, contrary to her testimony at trial. As stated above, evidence which is merely corroborative or impeaching does not warrant the granting of a motion for new trial on the ground of newly discovered evidence. *See People v. Gallegos, supra.* The defendant had already testified at the trial that complainant had several glasses of wine, and Detective Schafer said that he found two glasses in the trailer house, each smelling as if it had contained an alcoholic beverage. The addition of Spengler's testimony, even if newly discovered, is not such as would probably change the outcome if presented at another trial. *See People v. Scheidt, supra; DeLuzio v. People,* 177 Colo. 389, 494 P.2d 589.

## V.

 Relying on *Oaks v. People,* 150 Colo. 64, 371 P.2d 443, defendant's final argument is that the cumulative effect of irregularities during the trial deprived him of due process of law. He has attached voluminous appendices to his brief, quoting from the record, in support of his position.

Suffice it to say that we have read the entire record with care, and we find the defendant's arguments to be without merit. While subsequent events, which are alluded to in the record during the hearing on defendant's motion for new trial, indicate the impatience of the trial court with counsel's conduct of the case, there is nothing in the record of the trial before the jury to suggest that the trial judge conducted the proceedings injudiciously. If there were error in defendant's trial, it was harmless error, and we believe the defendant received a fair trial. *See People v. Scheidt, supra; Lee v. People,* 170 Colo. 268, 460 P.2d 796.

Judgment affirmed.

Van CISE, J., concurs.

COYTE, J., dissents.

COYTE, Judge (dissenting).

The majority opinion stresses the rule that the disposition of a motion for a mistrial lies within the sound discretion of the trial judge, and I have no quarrel with such principle. The rule, however, also provides that where the discretion of the trial court has been abused with resulting prejudice to defendant, denial of a motion for mistrial is reversible error. *People v. Maestas,* 183 Colo. 378, 517 P.2d 461. Here, in my opinion, the retention of Mrs. French on the jury after her disclosure of her prior contact with the defendant prejudiced his case and therefore the failure to grant a mistrial was an abuse of discretion.

Juror French admitted that she had called defendant's employer to complain of his behavior when he visited her daughter's home to attempt to sell a home freezer food plan. Additionally, she stated that her daughter had owned a knife similar to the one claimed to be used by defendant

during the assault, and which could not be found in her daughter's home after the defendant's visit. Thus, Mrs. French obviously had already formed an unfavorable opinion as to defendant's character and behavior.

The majority relies on the assertions of impartiality by Mrs. French, made during the *in camera* hearing; however, those statements in response to questions propounded by the trial court and defense counsel belie the possibility of her rendering an objective judgment. It is clear that in Mrs. French's mind it was a foregone conclusion that the defendant had "raped the girl." It is also clear that any admonition by the trial judge to put her knowledge of the prior dealings with the defendant out of her mind was futile. *See Krulewitch v. United States,* 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790.

The majority finds comfort in the decision rendered in *Brown v. People,* 132 Colo. 561, 291 P.2d 680, which held that there were no detailed standards which could be applied to determine when a mistrial is justified. In the *Brown* case the court went further, however, and ruled that the granting of a mistrial is legally justified in a criminal case where there has been an irregularity such as "could effect, or might in some way or manner be considered as interfering with, retarding, or influencing, to even a slight degree, the administration of honest, fair, even-handed justice to . . . any of the parties."

It is apparent to me that the presence of Mrs. French on the jury could have interfered with the administration of fair and even-handed justice to the defendant in the instant case, therefore, I would reverse and remand for a new trial.