## No. C-987

### Lawrence Eugene Beeman v. The People of the State of Colorado

(565 P.2d 1340)

Decided June 27, 1977.

James Robert Barash, for petitioner.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Deborah L. Bianco, Assistant, J. Stephen Phillips, Assistant, for respondent.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

The defendant was convicted of rape and deviate sexual intercourse by force in violation of C.R.S. 1963, sections 40-3-401 and 40-3-403, now sections 18-3-401 and 18-3-403, C.R.S. 1973, and his conviction was affirmed by the court of appeals. *People v. Beeman*, 37 Colo. App. 417, 551 P.2d 726 (1976). We granted certiorari and we now reverse and remand

for a new trial.

## I.

During the trial, one of the jurors informed the bailiff that there was a possibility that she knew the defendant. The defendant thereupon moved for a mistrial and, the trial judge held an *in camera* examination to determine if the juror should be disqualified for bias. *See* section 16-10-103(j), C.R.S. 1973; *cf. Hopkins v. People*, 89 Colo. 296, 1 P.2d 937 (1931).

At the *in camera* hearing, the juror stated that she believed the defendant may have been a man who had greatly upset her pregnant daughter. Her testimony was that this man had come to the daughter's home to discuss the sale of a home freezer food plan, but rather than discussing the food plan the man had talked about politics and the future of the world. Although there were no sexual implications to this meeting, the daughter was so upset that several days later the juror felt compelled to call the man's employer and complain. It was further disclosed that the juror thought it possible that a pearl handled knife allegedly used in the rape was the knife that was missing from her daughter's home.

During the examination, the judge questioned the juror about her capacity to act impartially in this case, and she gave assurances of her ability and desire to decide the case fairly. The judge thereupon denied the defendant's motion for a mistrial and the juror resumed her place on the jury.

The impartiality of jurors is a fundamental aspect of the Anglo-American conception of trial by jury, *see Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Metallic Gold Mining Co. v. Watson*, 51 Colo. 278, 117 P. 609 (1911), for it is this impartiality which ensures that a defendant will be tried only on the evidence presented at trial, *see Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). The preservation of impartiality by the exclusion of jurors for various reasons touching upon their ability to assess the defendant's guilt or innocence solely on the evidence admitted at the trial is one of the most difficult tasks faced by the courts since an assessment of an individual's state of mind is required. *See* section 16-10-103(j), C.R.S. 1973. *See also Dennis v. United States*, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950).

The enormous practical problems involved in these assessments have led to our vesting of great discretion in the trial court, *see People v. McCrary*, 190 Colo. 538, 549 P.2d 1320 (1976); *Leick v. People*, 136 Colo. 535, 322 P.2d 674, *cert. denied*, 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958), and the factors of appearance and credibility which are so intimately involved in the determination of bias leave little room for any other rule.

The placing of this discretion in the trial judge does not, however, permit appellate courts to abdicate their responsibility to ensure that

the requirements of fairness are fulfilled. At some point this court will say that the judgment made by the trial court was error. We have reached that point in the past, *see, e.g., Metallic Gold Mining Co. v. Watson, supra*, and we reach that point here.

We are not here critical of the juror. During the *in camera* hearing, she was completely straightforward. But the most sincere assurances and good faith belief by the juror in her capacity to act impartially cannot compensate for factors which inherently produce prejudice. In this case, it was clear that the juror was sufficiently upset by the defendant's possible earlier contact with her pregnant daughter that she called his employer to have him reprimanded. Further, the juror had raised the possibility in her mind that it was her daughter's knife which had been used in the alleged rape. Thus, we are not dealing with an opinion or abstract belief in the defendant's guilt or innocence. *Cf. People v. Buckner*, 180 Colo. 65, 504 P.2d 669 (1972). Rather, we are faced with factors relating to a personal and emotional situation concerning the juror and the accused. Had this situation been disclosed during selection of the jury, obviously, this juror would not have remained on the jury.

We adopt the very cogent reasoning of the court in *Delaney v. United States*, 199 F.2d 107, 112 (lst Cir. 1952), to the effect that one cannot assume that the average juror is so endowed with a sense of detachment, so clear in his introspective perception of his own mental processes that he may exclude even the unconscious influence of his preconceptions. Especially is this true here where the jury deliberated some six or seven hours on testimony which took no more than a day.

## II.

At a retrial, an additional problem raised by the defendant is likely to reoccur. The trial court prohibited the introduction of testimony from a psychologist concerning the victim's possible attitudes toward men and sex and of hypothetical reactions of people with such attitudes. *See Daugaard v. People*, 176 Colo. 38, 488 P.2d 1101 (1971). Whether the tendered testimony was material and not speculative under the circumstances of this case was within the discretion of the trial judge. We find no abuse of this discretion here.

The judgment is reversed and the cause remanded for proceedings not inconsistent with the views expressed herein.