## No. C-1534

## William Robert Hanes and Charles David Poole v.
## The People of the State of Colorado

(598 P.2d 131)

Decided June 11, 1979.                    Rehearing denied July 2, 1979.

32

J. Gregory Walta, State Public Defender, Craig L. Truman, Chief Deputy, Gene Beville, Special Deputy for petitioners.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Linda Palmieri Rigsby, Assistant Attorney General, Nathan B. Coates, Assistant for respondent.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

The petitioners, William Hanes and Charles Poole, were convicted of second-degree forgery in the District Court of El Paso County. The Colorado Court of Appeals, 42 Colo. App. 527, 596 P.2d 395, affirmed the convictions on January 5, 1978. We granted certiorari, and we now affirm the court of appeals.

The charges center around the petitioners' use of a gasoline credit card issued to Mr. Marvin Hancock. The evidence at trial shows that Mr. Hancock gave the card and permission to use it to Rebecca Barton. She used the card freely to purchase gasoline products for herself and her friends, signing the card as Mrs. Marvin Hancock. The manner in which the petitioners came into possession of the card is disputed. Ms. Barton testified that she threw the card away, that Charles Hanes, the brother of petitioner Hanes, picked it up and told her he would throw it away, and that she responded "okay." Petitioner Hanes, Charles Hanes and others testified that Ms. Barton *gave* the card to Charles Hanes and told him he could use it as he wished.

Petitioner Hanes admitted that he had used the card. Petitioner Poole did not testify at trial, but experts matched his handwriting with signatures on several credit card invoices. Both petitioners signed Marvin Hancock's name when they made purchases. After receiving a large bill, Mr. Hancock notified the issuer that his credit card had been stolen. The petitioners were apprehended and charged under section 18-5-103, C.R.S. 1973 (now 1978 Repl. Vol. 8), with second-degree forgery.

The jury found William Hanes guilty of twelve counts of second-degree forgery for purchasing $135.48 worth of products with the credit card. Charles Poole was found guilty of five counts of second-degree forgery for purchasing $70.22 worth of products with the· card. The

petitioners here assert several errors in the trial court. We address only two of the issues raised below. We do not address the constitutional issue because it was not raised on appeal.

## I.

The petitioners first contend that the trial court erred in refusing to excuse for cause jurors Masters and Moon and in refusing to grant a new trial on the grounds that the impartiality of the jury had been tainted. During the trial, juror Masters informed the court that petitioner Poole resembled a tenant who had formerly rented an apartment from her company and had left the place "in a shambles." The court and counsel *voir dired* juror Masters *in camera*. There it was disclosed that, for a number of reasons, the former tenant had created a very bad impression on juror Masters, but that she did not have a definite opinion at that time as to whether the tenant and petitioner Poole were the same person.

The court instructed her that if, at any time during the trial, she felt that Poole was this former tenant, she was under a *continuing duty* to disclose such information to the court. She did not further communicate with the court, and the petitioner's challenge for cause was denied.

Petitioners claim that the court's denial of their challenge for cause of juror Masters, given the availability of an alternate juror, denied them fundamental fairness. They cite as decisive on this issue this court's holding in *Beeman v. People,* 193 Colo. 337, 565 P.2d 1340 (1977).

However, we find that *Beeman* supports a result exactly opposite that urged by the petitioners. In *Beeman,* we stated the axiomatic principle that a trial court is given maximum liberty in assessing the impartiality of the jurors:

"The enormous practical problems involved in these assessments [of impartiality of jurors] have led to our vesting of great discretion in the trial court, [citations omitted] . . . ." *Id.* at 339, 565 P.2d at 1342.

We then held that "at some point, this court will say that the judgment made by the trial court was error." That point was reached in *Beeman.* In that case, the defendant was being tried for rape and deviate sexual intercourse. The challenged juror disclosed *in camera* that she believed the defendant may have been a man who had greatly upset her pregnant daughter and thought it possible that a pearl handled knife allegedly used in the rape was the same knife that was missing from her daughter's home. In the face of such clearly prejudicial circumstances, we held that the trial court had abused its discretion in not removing the juror for cause.

In the instant case, however, the facts are not so extreme. Rather, we think appropriate precautions were taken by the court to ensure the impartiality of juror Masters. Juror Masters assured the court that she could act impartially. By virtue of the fact that she did not contact the judge after the *in camera* hearing, she obviously concluded

that petitioner Poole was not her former tenant. We see no abuse of discretion in the trial court action on this issue.

The trial court also denied a motion to discharge for cause juror Moon, who had closed his eyes and revolved his head on various occasions during the several day trial. On the morning of the last day, the court noted that juror Moon had again closed his eyes, and it questioned juror Moon as to whether he was awake. The juror responded immediately that he had a headache and was in the habit of listening with his eyes closed. The court accepted this explanation and denied petitioner Hanes' offer of proof regarding juror Moon's sleeping in the courtroom. The petitioners claim that the court abused its discretion in not excusing juror Moon.

■ Again we believe that the judgment of the trial court must be honored. The judge had been alerted to the possibility that juror Moon may have been sleeping during the presentation of evidence. He was in an advantaged position to watch the juror during trial to determine whether that possibility was true, and he commented that he had in fact watched juror Moon. He questioned the juror at a time when he felt the juror may have been asleep, but found him to be awake and attentive. We do not think these facts point to an abuse of discretion by the trial court in denying petitioners' challenge for cause.

The petitioners also urge that the trial court erred in not granting their motion for a new trial on the grounds that two of the jurors (Gustofson and Edmonds) could not have acted impartially because of certain remarks made by a different judge in a different case in which they had previously served as jurors. After the prior case had terminated in a hung jury and a mistrial, the judge had told members of the jury that the defendant in that case had entered a plea of guilty, which the court could not accept. The petitioners claim this experience necessarily tainted the objectivity of these two jurors in the instant case.

■ Despite the impropriety of the judicial comments in the former case, we refuse to accept petitioners' assumption that the two jurors could not act impartially in the petitioners' case. Absent facts showing actual prejudice, we cannot hold, as a matter of law, that the prior remarks had any influence whatsoever on petitioners' trial.

II.

■ The trial court properly instructed the jury on the elements of second-degree forgery, under section 18-5-103. It refused the petitioners' tendered instruction on the offense of "fraudulent use of a credit device," set out in section 18-5-202, C.R.S. 1973 (1978 Repl. Vol. 8). The petitioners claim that this refusal to instruct the jury on the alternative crime constitutes reversible error. They argue that under this court's decision in *People v. Rivera*, 186 Colo. 24, 525 P.2d 431 (1974), they were entitled to an instruction on their "theory of the case."

In *Rivera* we dealt with instructions on lesser offenses in criminal trials. First, we held that the prosecution is not entitled to an instruction on a lesser offense than the offense charged unless the lesser offense is a "lesser included offense" by the terms of the criminal statutes. However, we also held that the *defense* is entitled to an instruction on any lesser offense — even though not a lesser included offense — *which the evidence may establish,* so long as the defendant requests the instruction.

We note initially that petitioner Hanes has no standing to make the present argument. As to him, "fraudulent use of a credit instrument" is not a lesser offense. Section 18-5-202(3) specifically holds that "[i]f the credit, property, or services obtained have a value of one hundred dollars or more, fraudulent use of a credit device is a class 4 felony." Petitioner Hanes was convicted of a class 4 felony for purchasing goods in excess of $100. Thus, he has nothing to gain from his challenge to the court's failure to give the requested instruction, for conviction under the alternative statute would also result in a class 4 felony.[1]

We therefore restrict our discussion of this issue to petitioner Poole who, because he purchased goods totalling *less* than $100, would only be guilty of a class 2 misdemeanor if he had been convicted of fraudulent use of a credit device rather than second-degree forgery.

The key to the *Rivera* principle is that there must be evidence in the case from which the jury might find that the elements of the lesser offense existed. An essential element of the crime of fraudulent use of a credit device as provided in section 18-5-202, is that the device be used without the permission of the issuer of the card or the person to whom it is issued. There is absolutely no evidence in this case that the issuer (Exxon) or the person to whom the card was issued (Marvin Hancock) gave permission to Poole to use this card. Nor is there any evidence in the record to support an assumption that Rebecca Barton had authority to authorize others to use it.

### III.

Finally, we find petitioner Poole's contention that he was denied a fair trial because his counsel was incompetent to be without merit. Likewise we reject the petitioners' contention that there was insufficient evidence to support their convictions and that the overall fairness of the trial was tainted.

The judgment of the court of appeals affirming the petitioners' convictions for second-degree forgery is affirmed.

----

[1] Judge Kelly, in dissenting from this portion of the opinion in the court of appeals, said *Rivera* required that the requested instruction be given to petitioner Poole, although not to petitioner Hanes. The majority rejected this argument and held that it was in the discretion of the district attorney to prosecute under the general forgery statute, rather than the more specific credit card law, citing *People v. James,* 178 Colo. 401, 497 P.2d 1256 (1972).

MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN concur in part and dissent in part.


MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN dissenting in part and concurring in part:

For the reasons set forth in the dissenting and partially concurring opinion of Judge Kelly of the Court of Appeals, we would reverse as to Poole. *People v. William Robert Hanes and Charles David Poole,* 42 Colo. App. 527, 596 P.2d 395.