## Stanly Castle and Elsie Castle, Appellants, v. Eugene Searles, Appellee.

Opinion filed June 14, 1940. Rehearing denied August 20, 1940.

TERRY, GUELTIG & POWELL, of Edwardsville, for appellants.

MANUEL M. WISEMAN, of Alton, and PHILIP G. LISTEMAN, of East St. Louis, for appellee; WHITNEL,

BROWNING, LISTEMAN & WALKER, of East St. Louis, of counsel.

MR. JUSTICE DADY delivered the opinion of the court.

This was an automobile accident case tried on a complaint and counterclaim. The jury found the defendant not guilty on the complaint and found the counter defendant guilty on the counterclaim and allowed counterclaimant $5,100 as damages. The trial judge required a remittitur of $1,100 and on such remittitur being made entered judgment for $4,000 on the verdict.

Stanly Castle was plaintiff and counter defendant. His wife, Elsie Castle, was a coplaintiff. These two were the only occupants of the Castle car. Eugene Searles was defendant and counterclaimant. He and his father were the only occupants of the Searles car.

The accident, a head-on collision, occurred on December 11, 1938, on a curve on a paved State highway. The Castle car was being driven east or easterly by Stanly Castle, and the Searles car was being driven west or westerly by Eugene Searles. No other car had anything to do with the accident.

Each party alleged and claimed that the automobile of the opposite party was traveling on the wrong side of the pavement.

These four persons were the only eyewitnesses who testified to the manner in which the cars actually collided,—except that the testimony of the counterclaimant is corroborated by the testimony of the witnesses Kessie, Brittin and Forbes.

Stanly Castle testified he was driving easterly at his "usual speed around fifty miles" an hour; that as he was driving at his "usual rate of speed in the right-hand lane suddenly—very suddenly—a car appeared in front of" him and he had "no recollection of what happened after that," and that "I first saw this car that came across the road just before it struck. I wouldn't say how far away it was when I first saw it.

... From a point where the accident occurred I could probably see a half mile to the east. I don't know how fast it was coming. That car suddenly appeared in our lane and we were on our right-hand side, that is the first time it impressed itself on my memory."

Mrs. Castle testified they were traveling between 45 and 50 miles an hour on their right-hand side of the pavement when "suddenly a car veered into our path from our left. I can't say what direction it was going because I didn't see it until it hit us."

Eugene Searles testified he was traveling between 20 and 30 miles per hour; "I seen a car coming around the curve which was taking in both sides of the road, and to avoid an accident I tried to pull off the road, which I did"; that he had all of his car, except the left rear wheel, off the road on the northerly side of the road, on the shoulder, at the time of the collision; that he saw the Castle car about 150 yards before the impact and pulled off the road and applied the brakes, and was "pretty near to a stop when the collision occurred."

Herman Searles testified he first saw the Castle car when it was about 150 or 200 feet distant; that his son applied the brakes and pulled off on the right-hand or northerly side of the road and was practically at a stop when the collision occurred,—and at that time the Searles car was off the slab on the north side of the shoulder, except the left back wheel was on the slab.

The witnesses Kessie, Brittin and Forbes were riding east in a car driven by Kessie. Each of these three witnesses testified that the Castle car passed them about 150 to 200 yards west of the place of the collision and in doing so traveled on the north side of the highway and didn't get back to the south side of the highway before the collision.

Other witnesses who arrived on the scene immediately after the accident testified to the position of the cars and to a mark or marks on the southerly side of the pavement, but we do not consider it material

to discuss such testimony. We place no particular significance on the location of such marks.

Stanly Castle was severely injured. Mrs. Castle was injured, but less severely. The injury to Eugene Searles, other than cuts and bruises, was a fracture of the second lumbar vertebra. After receiving emergency aid he was placed on a Bradford frame for about 10 days, a frame which arched the back. On the 10th day a cast was applied from his shoulders to his hips, which cast he wore until, and was wearing at the time of the trial on March 29, 1939. He testified that he had done no work since the accident; that at the time of the trial he had to use a cane; that he didn't have strength in his back; that his right knee bothered him; that it bothered him to move his neck; that he was nervous since the accident and was unable to sleep. He was in the hospital 10 days and thereafter was confined to his bed for about a month.

Stanly Castle and Elsie Castle first contend that the verdicts are contrary to the manifest weight of the evidence. In our opinion, so far as liability is concerned, such verdicts are not contrary to but are supported by the manifest weight of the evidence.

Criticism is made by them of the testimony of the three corroborating witnesses, but we see no justification for such criticism. No one of these three witnesses knew Eugene Searles or his father before the time of the accident, and they appear to be disinterested witnesses.

It is contended that the judgment is excessive. In our opinion the injuries shown by the record and which we have briefly described were sufficient to justify the amount originally allowed by the verdict, and the judgment is not excessive.

The Castles next contend that the court erred in not admitting in evidence plaintiffs' exhibit 4, which was offered in evidence for the purpose of impeaching the testimony of Herman Searles. Herman Searles testi-

fied as a witness in behalf of his son. On cross-examination he was shown exhibit 4. This exhibit was signed "Herman Searles By Mrs. Lavella Horton By John L. Bartee." Lavella Horton was the daughter of Herman Searles. He testified that he did not remember making any of the statements or being asked any of the questions written on the paper. He was not asked and did not testify whether he authorized any one to sign the paper or whether he knew that the paper was being so signed. Mrs. Horton, called as a witness by the plaintiffs, testified she did not hear her father make the statement and that she merely signed his name. She was not asked and did not testify whether her father asked or authorized her to sign his name. John Bartee, a witness for the plaintiffs, testified he did not hear Mr. Searles make any of the statements. He was not asked and did not testify whether Herman Searles authorized any of such signatures. It was not shown that Herman Searles knew of such writing or of such signatures. In our opinion a proper foundation was not laid for the admission of this exhibit, and there was no error in sustaining the objection to its admission.

Stanly Castle testified that he and his wife were making a trip from their home, a short distance from the place of the accident, to a farm they owned in Missouri. On cross-examination the following took place:

"Q. How big is that farm? A. 240 acres.

"Q. Now you say that you operate a farm in Foster-burg Township?

"Mr. Powell: Objected to; not material to this case giving his occupation, how big the farms are, I don't see—

"Mr. Listeman: I didn't ask how big the farm was.

"The Court: He asked how big the farm was in Missouri, and he answered without objection; I would have sustained an objection if one was made, but none was made; now then, Mr. Castle is asked what his occupa-

tion is in Madison County and he says operating a farm, I think that is proper.''

We do not consider that there was any error in these rulings.

The only other alleged error is the claim of Mr. and Mrs. Castle that the court erred in the giving of the second instruction, given at the request of Eugene Searles. In form this was a stock instruction on damages, generally given at the request of a plaintiff. The only fault found with such instruction is that it ''authorized the jury in assessing damages in favor of the defendant to take into consideration whether or not the defendant has been permanently injured.'' It is contended that there was no evidence whatever to support this instruction. So far as the point in question is concerned this instruction stated, ''In determining the amount of such damages, if any, you have a right to and should take into consideration . . . the nature and extent of defendant's injuries, if any, and whether or not he has been permanently injured so far as the same may be shown by a preponderance of the evidence to have directly resulted from the occurrence in question; . . .''

The only physician who testified as to the injuries of Eugene Searles, on cross-examination, testified,— ''As to his ability to do work, I think in this case this boy will recover, I don't know the time required, but I would think this boy would make a complete recovery.''

Eugene Searles was aged 23 years and his occupation was that of a carpenter and painter. Other than a scar, the only injuries which he received have already been fairly and sufficiently described. The only description in the record of such scar is that immediately after the accident he had ''a cut to the right of the chin about two inches long,'' in which ''about four stitches were taken,'' the doctor testifying,—''I think the scar on the chin is a permanent disfigurement.'' Counsel for Eugene Searles contend this scar was such a per-

manent injury as to justify the giving of this instruction. With this contention we cannot agree. (See *Chicago City Ry. v. Schaefer*, 121 Ill. App. 334, 348; *Cullen v. Higgins*, 216 Ill. 78, 84.)

The instruction makes no direct reference to any scar. If such were the meaning and intent of the language quoted and complained of, then Stanly Castle and his wife are in no position to complain for the reason that at their request the court gave a similar stock instruction on damages, telling the jury they had a right "to take into consideration . . . any scars . . . he or she sustained. . . . "

In *Illinois Iron & Metal Co. v. Weber*, 196 Ill. 526, a somewhat similar instruction was held error, and in *Chicago v. Colman*, 33 Ill. App. 557, a similar instruction was held error. In each of these cases there was a reversal, but not solely because of the giving of the particular instruction.

The giving of the instruction complained of in this case was error. This being the only error, and the verdict in our opinion not being excessive, we do not consider such error sufficient to justify a reversal.

*Affirmed.*