PEOPLE *v.* DEBEAULIEU.

1. CRIMINAL LAW—OPENING STATEMENT—PROCURING A MISCARRIAGE.
   In prosecution for procuring a miscarriage the prosecutor's single use in his opening statement of the word "victim" when referring to the woman upon whom the operation was performed was not prejudicial error (Act No. 328, § 14, Pub. Acts 1931).

2. SAME—ARGUMENT OF PROSECUTING ATTORNEYS.
   The Supreme Court is not inclined to reverse convictions in criminal cases because of claimed errors in the arguments of prosecuting attorneys unless such arguments are of a prejudicial nature and contribute to an improper verdict.

3. SAME—PROCURING A MISCARRIAGE—IMPEACHMENT OF COMPLAINING WITNESS.
   In prosecution for procuring a miscarriage where it appears that defendant had written out a statement that was signed by the

complaining witness by which latter purported to admit that she had brought about her own condition and that it does not appear that her attention was called to its contents or that she had adopted it, such statement was properly excluded when sought to be introduced to impeach such witness (Act No. 328, § 14, Pub. Acts 1931).

4. WITNESSES—IMPEACHMENT—PREVIOUS WRITTEN STATEMENT.
   While a witness may be impeached by producing his written statement which is inconsistent with the testimony given at the trial, such statement, in order to serve as a contradiction, must be shown to have been made by the witness himself, or by someone under his direction, or to have been approved and adopted by the witness as his own act and deed.

5. CRIMINAL LAW—PROCURING A MISCARRIAGE—KNOWLEDGE OF HOW TO PERFORM OPERATION.
   In prosecution of an osteopathic physician for procuring a miscarriage, question asked of defendant who took the stand as to whether she knew how to perform such an operation on the date alleged was a proper one since it was asked for the purpose of determining whether she had sufficient knowledge to commit the offense charged (Act No. 328, § 14, Pub. Acts 1931).

6. SAME—PROCURING A MISCARRIAGE—EVIDENCE.
   In prosecution of osteopathic physician for procuring a miscarriage, evidence was sufficient to support verdict of jury (Act No. 328, § 14, Pub. Acts 1931).

Appeal from Ingham; Carr (Leland W.), J. Submitted January 13, 1944. (Docket No. 82, Calendar No. 42,455.) Decided February 24, 1944.

Mabel G. DeBeaulieu was convicted of administering drugs and employing instruments with intent to produce a miscarriage. Affirmed.

*Hamilton & Sigler,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Marvin J. Salmon,* Assistant Prosecuting Attorney, for the people.

BUSHNELL, J. Defendant Mabel G. DeBeaulieu was convicted by a jury on the charge of administering medicines and employing certain instruments with the intent to produce a miscarriage, in violation of Act No. 328, § 14, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–14, Stat. Ann. § 28.204). On appeal she argues that she did not have a fair trial and that her right thereto was violated by the prosecutor when he said in his opening statement—

"we will show you, members of the jury, that the victim in this case is one Locena Bensinger."

She also claims that the trial judge committed error in excluding a certain "Exhibit A" which was purported to have been signed by the complaining witness. This exhibit was excluded on the ground that the proper foundation for its admission had not been laid.

There is sharp conflict in the testimony, it being the claim of the prosecutor's chief witness, Locena Bensinger, that she went to the city of Lansing, where an illegal operation was performed on her by the defendant. Defendant, on the other hand, insisted that she never saw or treated the complaining witness until she reached her bedside in Ionia, and that she then learned for the first time that the witness was suffering from an illegal operation.

The single use of the word "victim" could not have any bearing on the verdict of the jury, and we are not inclined to reverse convictions in criminal cases because of claimed errors in the arguments of prosecuting attorneys, unless such arguments are of a prejudicial nature and contribute to an improper verdict. *People* v. *Peck,* 147 Mich. 84, 95.

Defendant testified that she herself wrote out the statement contained in "Exhibit A." This exhibit purports to be an admission by the complaining witness that she brought about her own condition. The

circumstances regarding the drafting and execution of "Exhibit A" were related by the defendant as follows:

"*Q.* Did you write a statement out on a piece of paper?

"*A.* Yes; I asked her for a piece of paper to write down a statement, the address of her father and mother, that we could make out a death certificate and she got me a piece of paper, and he called to his mother to get something to eat for me, and I wrote out a statement at that time and there was a lot of sobbing and tearful, and I says, 'Put the name on here'—then they furnished the paper and pencil."

The trial judge accurately summarized the situation as follows:

"No claim was made that Locena Bensinger, whose testimony was sought to be impeached by this exhibit, had dictated or directed in any way the preparation of the statement. Rather, it is apparent from the record that defendant herself prepared it on her own initiative, and there is no showing, and no claim, that it was read to Mrs. Bensinger, or that Mrs. Bensinger read it. It does not appear that at the time defendant told her to put her name on the paper that any attention was called to the fact that there was some writing thereon.

"While the testimony of a witness may ordinarily be impeached by showing prior inconsistent statements, either verbal or written, it must appear that such prior statements were made, authorized, or adopted by the party, the impeachment of whose testimony is sought."

The applicable rule is stated in 6 Jones, Commentaries on Evidence (2d Ed.), p. 4746, § 2406, as follows:

"Hence, witnesses may be impeached by producing their written statements, for example, their

letters, affidavits, depositions or the like, which are inconsistent with the testimony given at the trial. * * * But it is, of course, plain that in order to serve as in itself a contradiction a writing must be shown to have been made by the witness himself, or by someone under his direction, or to have been approved and adopted by the witness as his own act and deed."

See, also, *Castle* v. *Searles,* 306 Ill. App. 304 (28 N. E. [2d] 619); *Altieri* v. *Railway Co.,* 103 N. J. Law, 351 (135 Atl. 786); *Hyde* v. *Kloos,* 134 Minn. 165 (158 N. W. 920). The trial judge did not err in excluding "Exhibit A."

In support of her argument that she did not have a fair trial, defendant, who is an osteopathic practitioner, argues that the court allowed the prosecutor to ask her the following "trick question:"

"*Q.* I will ask you whether or not on December 6th, 1941, you knew how to perform such an operation?"

Defendant claims that this constituted prejudicial error and that no objection to the question was required, citing *People* v. *Kelsey,* 303 Mich. 715, 719. In the *Kelsey Case* it was held that the "examination could have been for no other purpose than to create prejudice in the minds of the jurors." In the instant case the question was asked for the purpose of determining whether defendant had sufficient knowledge to commit the offense with which she was charged and, under the circumstances of the case, was a proper one.

Defendant did have a fair trial and there is sufficient evidence to support the verdict of the jury. We find no reversible error and the sentence is affirmed.

North, C. J., and Starr, Wiest, Butzel, Sharpe, Boyles, and Reid, JJ., concurred.