## No. 24980

### The People of the State of Colorado v. Jesse S. Bugarin
(507 P.2d 875)

Decided March 5, 1973. Opinion modified and as modified rehearing denied March 26, 1973.

64

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Aurel M. Kelly, Assistant, for plaintiff-appellee.

Gerash and Kaiser, Walter L. Gerash, H. D. Reed, for defendant-appellant.

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Jesse S. Bugarin was charged with aggravated robbery, 1967 Perm. Supp., C.R.S. 1963, 40-5-1(2), and assault with intent to murder, C.R.S. 1963, 40-2-34, both of which arose out of a single robbery in Denver. He plead not guilty and was tried to a jury. An eyewitness identified the defendant as the person who committed the robbery. By cross-examination, defense counsel sought to discredit the identification testimony. The identification issue was crucial, because the principal defense was an alibi that placed the defendant in Pueblo at the time the crime was committed. Several witnesses substantiated the defendant's alibi, but the key witness was the defendant's common-law wife. The prosecution made a determined effort to impeach her and to discredit her testimony. Defense counsel asserts that the prosecution unfairly attempted to discredit the defendant's alibi and improperly pyramided charges against the defendant.

The jury was given verdict forms which called for a determination of guilt or innocence of the following

offenses: aggravated robbery, assault with intent to murder, and assault with a deadly weapon, which is a lesser-included assault offense. The jury convicted the defendant of aggravated robbery and assault with a deadly weapon.

For the reasons hereinafter stated, we reverse and remand for a new trial.

## I.

Both the robbery and assault charges were based on one incident in which a gunman robbed a drugstore and shot the druggist. The defendant claims that his conviction for both robbery and assault constitutes double jeopardy. He asserts that the assault which occurred during the robbery was such an inseparable part of the crime of aggravated robbery that punishment for both offenses amounts to double punishment for the assault.

■ The defendant's contention involves both the federal and our state constitutional prohibitions against double jeopardy. U.S. Const. amend. V; Colo. Const. art. II, § 18. Colorado, however, has long followed the interpretation of the federal double jeopardy provision set forth in *Blockburger .v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), to determine whether two offenses are the same. Briefly stated, the rule is that a single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

■ The offense of assault with intent to murder requires proof of a specific intent to kill, a fact not necessary to sustain a charge of aggravated robbery. On the other hand, aggravated robbery requires proof of a robbery, a fact not necessary for assault. Therefore, punishment for both of these offenses committed during one course of conduct does not violate the constitutional prohibition against double jeopardy for the same offense.

■ The trial court, however, also submitted to the jury

a charge of assault with a deadly weapon as a lesser-included offense of the charge of assault with intent to murder, and the jury convicted the defendant of the lesser assault. Under the instructions given the jury, aggravated robbery is a robbery during which the robber is armed with a dangerous weapon with the intent, if resisted, to kill, maim, or wound. According to the court's instructions, assault with a deadly weapon is an assault with a deadly weapon with intent to commit a bodily injury. It is clear that assault with a deadly weapon is also a lesser-included offense of the aggravated robbery charge which was submitted to the jury. *People v. Futamata,* 140 Colo. 233, 343 P.2d 1058 (1959). *See People v. Velasquez,* 178 Colo. 264, 497 P.2d 12 (1972). Since the jury convicted the defendant of aggravated robbery, his conviction for the included offense of assault with a deadly weapon must be set aside. Other errors occurred, however, which require that we reverse the conviction of the defendant of aggravated robbery and grant a new trial.

II.

Additional reasons exist for granting a new trial. Over-zealous prosecution resulted in the admission of evidence which we deemed to be prejudicial. The prosecution introduced a police mug shot, with accompanying testimony which suggested that the defendant had a prior criminal history. The mug shot which was offered and introduced into evidence, over the defendant's objection, was a typical police identification photograph. It showed a full face and profile view of the defendant with only the police identification numbers removed. *See Barnes v. United States,* 365 F.2d 509 (D.C. Cir. 1966). The mug shot was introduced on the purported theory that it helped establish the identity of the robber and his appearance at the time the robbery occurred. The record does not reflect that the mug shot had any probative or identification value. *See Lucero v. People,* 166 Colo. 233, 442 P.2d 820 (1968); *Valley v. People,* 165 Colo. 555, 441 P.2d 14 (1968).

When the defendant failed to take the stand, the prosecution also endeavored to show his past criminal record

by asking his common-law wife whether she knew that the defendant had to obtain consent from someone before he could get married. It is apparent to us that the efforts of the prosecution to impeach the defendant's common-law wife went too far. *See Gill v. People,* 139 Colo. 401, 339 P.2d 1000 (1959); *American Bar Association Standards for Criminal Justice Relating to The Prosecution Function and The Defense Function, The Prosecution Function,* § § 5.6(b) and 5.7(a). The question which was objected to, when coupled with the mug shot exhibit which was without probative value, resulted in reversible error. The question should not be asked at the time of retrial.

It is apparent to us that the prosecution's implication of prior criminality on the part of the defendant constituted prejudicial error that cannot be considered harmless.

### III.

Error is also predicated on the introduction of an offense report that was made after the robbery was committed. The defendant claims that the offense report contained prejudicial hearsay and that no proper foundation was laid for its admission. We agree.

A defense witness, a police officer, was asked for the physical description of the robber that he obtained immediately after the robbery was committed. He provided the description and testified without notes. On cross-examination, the offense report was offered as an exhibit and was admitted on the theory that the officer had used the report to refresh his recollection before testifying. *Gallegos v. People,* 157 Colo. 484, 403 P.2d 864 (1965), does not permit the introduction of the entire report under the circumstances of this case. No part of the document was used or referred to by the police officer in his direct testimony, and the admission of the offense report in the course of cross-examination was error. *See, Goldman v. United States,* 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942). *Cf.* Rule 612, *Rules of Evidence for the United States Courts and Magistrates.*

## IV.

■ Finally, we come to the question of the admission of the Trujillo affidavit. As part of her alibi testimony, Mrs. Bugarin stated that she and the defendant were in Pueblo on Sunday, at the time the robbery was committed. The prosecution called Mrs. Bugarin's cousin, Julius Trujillo, as part of its rebuttal case. Trujillo testified that Mrs. Bugarin asked him for a statement that the defendant was in Pueblo over the entire weekend. Trujillo said he refused to give such a statement, since he only saw the defendant on Sunday night. Mrs. Bugarin previously testified that she requested that he sign a statement which would establish the couple's presence in Pueblo on Sunday night. The prosecution then offered, and caused to be admitted, a document signed by Trujillo which stated that Bugarins were in Pueblo over the entire weekend. The statement was introduced to impeach Mrs. Bugarin by showing a prior statement which was inconsistent with her testimony that she only asked her cousin to sign a statement that she and her husband were present in Pueblo on Sunday night. The statement was not written or prepared by Mrs. Bugarin, and no evidence established that she knew or was even aware of its contents. Hence, the document was inadmissible hearsay with respect to Mrs. Bugarin. *People v. DeBeaulieu,* 308 Mich. 173, 13 N.W.2d 250 (1944).

The judgment is reversed, and the cause is remanded for a new trial consistent with the views expressed herein.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE GROVES concur in the result only.