The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

John David BOZEMAN, Defendant-Appellant.

No. 78–1208.

Colorado Court of Appeals, Div. II.

Nov. 28, 1980.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Mary R. Ricketson, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Stephen M. Brett, Sp. Deputy Public Defender, Denver, for defendant-appellant.

SMITH, Judge.

Defendant, John David Bozeman, appeals his conviction for second degree burglary. We affirm.

Bozeman seeks reversal on three grounds: (1) that a judgment of acquittal should have been entered in that the People failed to prove that the defendant had "unlawfully entered or remained" in the subject premises as required by § 18–4–203, C.R.S. 1973; (2) that the court erred in denying defendant's motion for a mistrial made because a witness exhibited to the jury the defendant's police identification photo; and (3) that the trial court erred in admitting nine photographs used in a photographic identification procedure.

Defendant was convicted of second degree burglary of a building occupied by Admiral Merchants Motor Freight, Inc., (Admiral) located in a commercial area within Commerce City. Admiral is a designated freight carrier, having care, custody, and control of freight until delivery to a designated consignee or to another carrier. The company's terminal building consists of a terminal dock and freight storage area enclosed by a fenced yard. Inside the terminal building a dispatch office overlooks, through windows, an internal portion of the building, known as the terminal dock, where freight is temporarily stored during handling for shipment and delivery.

The evidence shows that at approximately 6:15 a. m., Arthur Murphy, an Admiral employee, looked out of the window in the dispatch office and noticed an individual, later identified as the defendant, in the storage area of the building. Murphy saw the defendant pick up a carton and start walking towards the exit of the terminal. Murphy approached the defendant and asked what he was doing, to which question the defendant replied, "Nothing." Murphy then asked the defendant to put down the box that he was carrying. The defendant did not reply and continued walking out the east door with the carton. John Wood, another employee of Admiral, saw the defendant exiting the building carrying a large carton. Wood watched while defendant carried the box to the side of his car, opened the top of the box, and looked at the contents. Wood then saw defendant enter his car and leave the premises without either the box or its contents.

## I.

Defendant argues that the prosecution failed to establish beyond a reasonable doubt that the defendant had "unlawfully entered or remained" in the motor freight terminal, and that therefore, the trial court erred in denying his motion for judgment of acquittal. More specifically, defendant argues that Admiral's warehouse terminal was a building that was open to the public.

One element that must be proven to establish second degree burglary is that the defendant entered or remained in the building without license, invitation, or privilege to do so. Section 18–4–203(1), C.R.S. 1973, (1978 Repl.Vol. 8). Section 18–4–201(3) C.R.S. 1973 (1976 Cum.Supp.) provides:

"A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of the premises or some other authorized person. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public."

Given the above statutory language, the essential question here becomes, whether the Admiral freight terminal was "open to the public."

Defendant argues that since the doorways, storage areas, and aisles were not specifically marked as restricted areas, the terminal building was, therefore, open to the public. We do not find this reasoning persuasive since it would necessarily imply that any building that is not specifically marked private property, and that has its entryways unlocked, is a building open to the public.

In deciding whether the Admiral warehouse terminal is "open to the public" we adopt a definition which we believe comports with the intent of the General Assembly in using those words. We find that definition in *Or.Rev.Stat.* § 164.205

"Open to the public means premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe no permission to enter or remain is required."

Applying that definition here, we conclude that a reasonable person would not be led to believe that he had permission to enter or remain within the Admiral premis-

es unless his presence was incident to a lawful business purpose in which event no permission to enter or remain would be required.

The record shows that the Admiral terminal building was not a public building in the sense that a department store or airline terminal is a public building; the general public is not invited onto the premises for non-specific business purposes. Although there are no signs or notices on any of the building entrances or exits notifying members of the public of any restriction or limitation on their access to the building, Admiral's premises are not designed or advertised for use as a public structure. By the very nature of its layout, design, and location, it is apparent that its function is solely to facilitate the unloading, handling, and storage of freight. The only persons with reason or authorization to enter the warehouse are employees of Admiral or persons there for a specific business purpose. Here, there was no contention that defendant was an employee or had any business purpose in the terminal and the evidence establishes this to be the fact. Hence, the element of entering or remaining on the subject premises was adequately demonstrated by the prosecution's evidence.

Defendant cites several cases where convictions for burglary were not sustained because the element of trespass was not established. *E.g., People v. Diaz*, 182 Colo. 369, 512 P.2d 444 (1973). However, these cases are inapposite because in each the defendant had authority to enter the premises by virtue of his employment.

Likewise, defendant's reliance on *Macias v. People*, 161 Colo. 233, 421 P.2d 116 (1966) is misplaced. The analogy he attempts to draw between a public telephone booth in that case, and the warehouse here is not reasonable.

Accordingly, the trial court was correct in denying defendant's motion for judgment of acquittal.

## II.

Defendant next contends that the trial court erred in denying defendant's motion for a mistrial made during the direct examination of People's witness, Arthur Murphy, when that witness exhibited to the jury the defendant's police identification photograph.

The day following the burglary, Arthur Murphy identified the defendant from a series of photographs shown to him by a police officer. At trial, subsequent to an in-court identification of the defendant by Murphy, the prosecutor questioned Murphy about the photographic identification of the defendant. The district attorney handed nine photographs to Murphy, who stated that he had selected defendant's picture from these photographs.

In the course of describing the pictures, Murphy held up the defendant's photograph for a brief moment in full display to the jury. The photograph was a "mug shot" with a front view and a side view, with a height marker inbetween. The police identification numbers were not visible on the picture, and the jury was told only that the picture was a "photograph" brought by the police officer to Murphy's office. The photographs were never referred to as mug shots or as police identification photographs in the jury's presence.

Upon objection of defendant's counsel that the display of these photographs was prejudicial to the defendant, the trial court ordered that the photographs be altered before submission into evidence. This alteration was performed and consisted of the elimination of the side view, leaving only the frontal facial view.

Defendant's counsel moved for a mistrial despite the modification of the photographs. In denying the motion for a mistrial, the judge commented that from the jury box (a distance of thirty-five or forty feet) he was able to determine that the photographs were mug shot photographs, but that he did not believe that the jury would have been able to reach the same conclusion.

Defendant argues that the inadvertent display of his police identification picture was prejudicial and that it indicated that the defendant had a prior criminal record.

920 ■ ▬▬▬▬▬▬▬

Defendant cites the cases of *People v. Bugarin*, 181 Colo. 57, 507 P.2d 879 (1973) *(Bugarin I)*, and *People v. Bugarin*, 181 Colo. 62, 507 P.2d 875 (1973) *(Bugarin II)*, to support his contention that the use of such photographs at trial is prohibited.

■ The general rule is that the use of "mug shots" bearing police identification data is deemed prejudicial and is not permitted. *People v. Bugarin, (I and II) supra*. However, the present case is distinguishable from the *Bugarin* cases in several respects. First, the police identification photograph in question was displayed only momentarily in the direction of the jury, and second, the photograph was altered in compliance with the requirements set forth in *People v. Pickett*, 194 Colo. 178, 571 P.2d 1078 (1977), prior to its admission into evidence. In contrast to the situation here, in the *Bugarin* cases the police identification photograph or mug shot was admitted into evidence in an unaltered state. Also, we note that here the trial court carefully considered the magnitude or prejudice to the defendant, ultimately determining that it was doubtful that the jury could have identified the photographs as "mug shots."

■ "The grant or denial of a mistrial rests in the trial court's sound discretion, and will not be disturbed 'absent gross abuse of discretion to the prejudice of the defendant' ...." *People v. Sexton*, 192 Colo. 81, 555 P.2d 1151 (1976). We find no such abuse of discretion here. We cannot say that the momentary display of the defendant's police identification photograph influenced the jury or reflected adversely upon the issue of the defendant's guilt or innocence.

### III.

■ Finally, defendant argues that the court erred in admitting the photographs used in the photographic identification procedure by the police officer in that the photographs were not offered for any legitimate purpose. Defendant contends that the pictures served only to alert the jury to defendant's prior criminality.

This argument is without merit. The prosecution's apparent purpose for offering these pictures into evidence after the in-court identification was to assist the jury in evaluating the weight to be given to the identification testimony of People's witness Arthur Murphy. In light of the fact that Murphy was able to make an in-court identification of the defendant, based upon his own independent recollection of the incident, we conclude that the admission of the photographs did not constitute reversible error.

Judgment affirmed.

PIERCE and STERNBERG, JJ., concur.