Kenneth R. COBBIN, Petitioner,

v.

Aristedes W. ZAVARES, Executive Director, Mark E. McKinna, Superintendent, and the Attorney General of the State of Colorado, Respondents.

No. 97–B–2258.

United States District Court, D. Colorado.

Jan. 11, 1999.

Gale A. Norton, Attorney General's Office, Washington, DC, for Defendants.

Kenneth R. Cobbin, Limon, CO, pro se.

## ORDER

BABCOCK, District Judge.

In this 28 U.S.C. § 2254 proceeding, Magistrate Judge Patricia A. Coan on October 28, 1998, entered and served her recommendation that the petition be denied. Petitioner has timely filed thorough and comprehensive

objections to the magistrate judge's recommendation. I have therefore reviewed the recommendation *de novo,* in light of the file and record in this action. On *de novo* review, I conclude that the recommendation is correct. Accordingly,

IT IS ORDERED that the above petition be DENIED and the action DISMISSED.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

COAN, United States Magistrate Judge.

This matter is before the court on a petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Kenneth Cobbin on October 20, 1997. Also before the court are Petitioner's Motion for Appointment of Counsel [filed May 8, 1998], Motion for a Briefing Schedule and/or Evidentiary Hearing [filed May 8, 1998], and Petitioner's Request for Copy of State Court Record [filed October 1, 1998]. A Special Order of Reference under 28 U.S.C. § 636(a) and (b) referred the Petition to the undersigned magistrate judge on January 22, 1998 for a recommendation on disposition. The Respondents filed their Answer to Order to Show Cause on March 9, 1998 and Petitioner filed a Traverse to the Answer on March 20, 1998. The court has determined that oral argument would not materially assist the Recommendation.

## I. Background

Kenneth Cobbin ("Petitioner" or "defendant"), currently serving a life sentence at the Limon Correctional Facility, was convicted by a Denver District Court jury of aggravated robbery, mandatory sentence for a violent crime, and four habitual criminal counts on May 20, 1988. Daniel Yeager, a delivery driver for Domino's Pizza, was robbed at gunpoint on January 29, 1987 while delivering a pizza to 2419 Downing Street in Denver, Colorado. Yeager subsequently identified Petitioner as the robber.

Petitioner appealed the judgment of conviction to the Colorado Court of Appeals on October 26, 1988, which appeal was dismissed and subsequently reinstated upon Petitioner's motion. *See* August 17, 1990 Order in Colo.App. No. 88CA1424. (R.[1] Vol. I, at pp. 107–108) On appeal, Petitioner claimed that the trial court erred in admitting into evidence highly prejudicial mug shot photographs of Petitioner which were indicative of prior criminal activity; that the victim's reference to the photographs as "mug shots" constituted reversible error; and that he was denied effective assistance of trial counsel with regard to the admission of the photographs. (R. Vol. I, at pp. 210–218) The Colorado Court of Appeals affirmed the judgment on April 16, 1992, Colo.App. No. 88CA1424. *(Id.)* The Colorado Supreme Court denied certiorari review on October 26, 1992. (Petitioner's Ex. A–1)

Petitioner filed his Amended Post Conviction Application under Colo.R.Crim.P. 35(c) with the state trial court on or about February 23, 1994. (R. Vol. I, at pp. 40–59) In his Rule 35(c) motion, Petitioner claimed, *inter alia,* that he was deprived of his rights under the Sixth and Fourteenth Amendments to effective assistance of trial counsel because counsel failed to object when the prosecution, during its case-in-chief, introduced into evidence testimony and mug shot photographs of Petitioner which were highly prejudicial in that the evidence indicated prior unrelated criminal activity by the Petitioner.

The trial court held a hearing on Petitioner's Rule 35(c) motion on May 19, 1995 and June 29, 1995 during which the court heard testimony from Petitioner's trial counsel, Scott Wolfe, and from Thomas Hammond, a criminal defense attorney, on the issue of whether defense counsel was ineffective in failing to object to the introduction of the mug shots of Petitioner at trial and to related testimony. (R. Vols. XI and XII) The trial court denied the Rule 35(c) motion on June 29, 1995, on the ground that the ineffective assistance of counsel issue had already been decided by the Colorado appellate courts on direct review of Petitioner's conviction, that the information presented to the trial court in the Rule 35(c) motion had been available to Petitioner at the time of his direct appeal, and that the trial court was therefore not required to entertain a successive request for the relief based upon the same or similar

---

1. All references to "R." are to the certified copy of the state court record.

allegations as were contained in Petitioner's direct appeal. (R. Vol. XII, at pp. 8–13).

Petitioner appealed the trial court's denial of his Rule 35(c) motion to the Colorado Court of Appeals on July 17, 1995. (R. Vol. I, at pp. 114–115). On March 13, 1997, the Court of Appeals affirmed the trial court's denial of Petitioner's Rule 35(c) motion on the merits in Colo.App. No. 95CA1292. (R. Vol. I, at pp. 234–246). The Colorado Supreme Court denied certiorari review on September 22, 1997. (Petitioner's Ex. C)

In his Petition for habeas corpus relief, Mr. Cobbin contends that his trial counsel was constitutionally deficient because counsel failed to object, move to strike, request a cautionary jury instruction, or move for a mistrial when:

> [The prosecutor] introduced the petitioner's mug shots into evidence [including the profile views];

> Yeager [the victim] testified that he had viewed 'mug books' containing 'mug shots' with 'numbers and dates' on the pictures 'at the Denver Police Department';

> [Detective] Martin testified that the petitioner's mug shot ( [Petitioner's] appendix G) had come from the 'book room' which was the 'adjoining room' to his office at the 'police station' and, that the 'mug shot' was 'two years old';

> A police officer testified that 'the petitioner was a possible suspect in another aggravated robbery' and, 'another police officer was familiar with the petitioner';

> [Detective] Martin states that 'the petitioner had been targeted as a suspect.'

Petition, at pp. 6d–6e.

Petitioner asserts that his counsel's failure "to object to the inadmissible and highly prejudicial previous criminality evidence-testimony could have altered the outcome of petitioner's case... [because] it is reasonably certain that [the trial judge] would have excluded the evidence and testimony because its [sic] probative value was non-existent and its [sic] prejudicial effect was great." *Id.* at p. 6f. Petitioner asserts that the jury was hesitant to convict him, as evidenced by the jurors' request to review a transcript of Yeager's testimony and their subsequent query as to whether they could convict Petitioner of a lesser charge. *Id.*

Respondent concedes, and the court finds, that Petitioner exhausted his state court remedies prior to filing a petition for habeas corpus relief in this court. *See* 28 U.S.C. § 2254(b) and (c). Respondent has not raised any procedural defenses to Petitioner's claims.

## II. Standard of Review

Under 28 U.S.C. § 2254(d), a prisoner in custody pursuant to the judgment of a state court shall not be granted habeas corpus relief with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## III. Legal Analysis

To establish a claim of ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that: (1) "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court deciding an ineffective assistance claim raised in a petition for habeas corpus relief must consider the totality of the evidence before the jury. *Id.* at 695–97, 104 S.Ct. 2052.

The court's review of counsel's performance under the first prong of the *Strickland* test is highly deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [internal quotation omitted]

*Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■ In applying the *Strickland* test, the court need not undertake an analysis of the effectiveness of counsel's performance if the court determines that a petitioner's allegations are insufficient to show a reasonable probability that, but for counsel's alleged errors, the outcome of the trial would have been different. *Church v. Sullivan,* 942 F.2d 1501, 1513 (10th Cir.1991).

■ As a general rule, evidence of a defendant's criminal activity which is unrelated to the offense charged is inadmissible in a criminal trial to a jury. *People v. Goldsberry,* 181 Colo. 406, 509 P.2d 801, 803 (Colo. 1973). Such evidence may be admissible to prove a proposition material to the offense, such as identification of the defendant, but if admitted as probative, a cautionary instruction should be given limiting the purpose of the evidence. *Id.; see, also, People v. Thatcher,* 638 P.2d 760, 769 (Colo.1981). The reason for the general exclusion of evidence of prior criminality by a criminal defendant is to ensure that the defendant is found guilty on the present charge because the evidence supports a guilty verdict, not because he is a person of bad character. *People v. Lucero,* 200 Colo. 335, 615 P.2d 660, 665–66 (1980) (citing III A.J. Wigmore, Evidence § 921 at 724 (Chadbourn rev. ed.1970)).

In *People v. Bugarin,* 181 Colo. 62, 507 P.2d 875, 877 (1973) (*Bugarin I*), the Colorado Supreme Court held that police identification photographs which show a full face and profile view of the defendant, commonly referred to as "mug shots", imply criminal conduct and may not be introduced by the prosecution unless their probative value outweighs their prejudicial effect. *See, also, People v. Bugarin,* 181 Colo. 62, 507 P.2d

875, 877–78 (1973) (*Bugarin II*). If the photographs are relevant and properly admitted by the trial court, a cautionary instruction should be given. *Thatcher,* 638 P.2d at 769; *People v. Thorpe,* 40 Colo.App. 159, 570 P.2d 1311, 1315 (1977).

■ The Colorado Supreme Court has further held that an accurate photograph of the defendant is admissible if the jury could reasonably conclude from the photo that it was taken at the time of defendant's arrest for the crime being tried. *Thatcher,* 638 P.2d at 769. In addition, the prejudicial effect to the defendant of introducing mug shots may be mitigated by excision of police identification numbers from the pictures, by detachment of the profile views, and by referencing the mug shots as "photographs." *People v. Pickett,* 194 Colo. 178, 571 P.2d 1078, 1083 (Colo. 1977); *People v. Bozeman,* 624 P.2d 916, 919–20 (Colo.App.1980); *People v. Borrego,* 668 P.2d 21, 24 (Colo.App.1983).

### A.

The crux of Petitioner's claims is that defense counsel failed to object to the admission into evidence of two mug shot photographs of Petitioner, one taken in March 1985 and one taken in February 1987. The court has reviewed the certified copy of the state court record filed by Respondents on August 25, 1998. The court sets forth below those portions of the pre-trial and trial proceedings which are pertinent to a resolution of Petitioner's ineffective assistance of counsel claim.

During pre-trial motions hearings, both the prosecutor and defense counsel moved, *in limine,* for an order precluding either the prosecutor or the State's witnesses from making any reference, during the prosecution's case-in-chief, to defendant's possible or actual involvement in criminal activity unrelated to the Yeager robbery. (R. Vol. VIII, at p. 374) The court granted counsel's motion and ordered the prosecutor to instruct the law enforcement officer witnesses not to make reference to any criminal matter involving the defendant other than the Yeager robbery. (*Id.* at p. 375) Defense counsel then requested that the court's order include any reference to "mug shots" during the

prosecution's case-in-chief(*Id.* at p. 375) Defense counsel suggested to the trial court that mug shots of defendant be referred to in front of the jury as "picture books or something that doesn't imply criminal activity." (*Id.*) The court then ordered the prosecutor to instruct the State's witnesses to refer to the mug shots as "books of photographs at the police department." (*Id.* at p. 375) Defense counsel voiced no objection to the trial judge's instruction and further stated that he did not object to the mug shot books being referred to in front of the jury as a "book of pictures of robbery suspects." (*Id.* at p. 376)

During a later pre-trial motions hearing, defense counsel also moved, *in limine,* for an order excluding any evidence or reference to defendant's arrest on a criminal charge that was not related to the Yeager robbery. (R. Vol.IX, p. 522) Defense counsel reiterated that he had no objection to the jury being informed that the victim had looked at picture books and then at a photo array. (*Id.*) The court ruled that it would be highly prejudicial, and not probative of the identification issue, to inform the jury during the prosecution's case-in-chief that the 1985 photograph of Petitioner at the police station was taken because of defendant's arrest on an unrelated criminal charge. (*Id.* at pp. 523–24) With regard to the photograph of Petitioner taken on February 5, 1987, counsel moved to exclude any reference to the fact that Petitioner was arrested the day before the picture was taken as highly prejudicial and irrelevant. (*Id.* at p. 525) Defense counsel agreed to stipulate to the date on which the photograph was taken. (*Id.*) The trial court ruled that the fact that the 1987 photograph was the product of Petitioner's arrest could not be brought out in the prosecution's case-in-chief. (*Id.*)

The trial began on May 19, 1987. Daniel Yeager, the robbery victim, testified that a few days after the January 29, 1987 robbery, Detective Martin asked Yeager to "look at some books with pictures in them" at the police station. (R. Vol.IX, p. 557) Yeager testified that after reviewing the "mug books," he picked out the photographs of two individuals who resembled the perpetrator, but was unable to positively identify either one as the perpetrator. (*Id.* at p. 559) Yeager testified that he returned to the police station on February 16, 1987, at Martin's request, at which time Martin handed him a "card with pictures on it" and instructed Yeager to determine if the perpetrator was in one of the pictures. (*Id.* at p. 560) Yeager identified the Petitioner as the perpetrator in the photographic array, People's Ex. B, at position 4. (*Id.* at pp. 560–62) The photographic array was admitted into evidence with no objection from defense counsel. (*Id.* at p. 565)

Defense counsel cross-examined Yeager regarding discrepancies between the description Yeager gave of the perpetrator to police officers and defendant's actual physical features. (*Id.* at pp. 567–599).

Jack Davoll, a Denver police officer, testified that on or before January 31, 1987 he received information from another police officer that the defendant was a possible suspect in an aggravated robbery and that his partner, Officer Kukaris, was "familiar with" the defendant. (R. Vol.IX, p. 611) Defense counsel objected and moved to strike Davoll's testimony. (*Id.* at p. 611) The court sustained the objection and instructed the jury to disregard Davoll's testimony. (*Id.* at pp. 611–612) Davoll then testified that while he and Officer Kukaris were on patrol the night of January 31, 1987, Officer Kukaris made contact with Petitioner at a location approximately six to seven blocks from where the January 29, 1987 robbery had occurred. (*Id.* at pp. 611, 613–614) Davoll testified that Petitioner was cleared at that time as not having any outstanding arrest warrants against him, and that Davoll and Kukaris prepared a "field contact card" on Petitioner, describing the date and place of contact, a physical description of Petitioner, and a description of what Petitioner was wearing. (*Id.* at pp. 613–15, 617)

After Davoll's testimony, and after the jury was excused from the courtroom, defense counsel moved for a mistrial based on Davoll's testimony that he was told by another officer that defendant was a suspect in the robbery prior to January 31, 1987. (R. Vol. IX, p. 621) The court denied counsel's motion. (*Id.*)

Before the jury returned for the afternoon session, defense counsel requested that the

1985 photograph of Petitioner be edited so that the Denver Police Department ("DPD") number would be excised prior to its admission into evidence. (*Id.* at p. 622–23) The court ruled that the DPD number was highly prejudicial to the defendant and of no relevance to the State on the identification issue. (*Id.* at pp. 623–24)

During the afternoon session, Detective Martin testified that he received information from officers Davoll and Kukaris that they had contacted the Petitioner on January 31, 1987 and that those officers also provided Martin with a physical description of Petitioner. (*Id.* at p. 626–627) Martin compared the physical description provided by officers to the description provided by Yeager of the perpetrator of the January 29, 1987 robbery and determined that the descriptions were consistent. (*Id.* at pp. 627–28) Martin testified that when Yeager came to the police station on February 3, 1987, Martin took him "into a room" and "showed him a book of pictures." (*Id.* at p. 628) Martin testified that after he gave Yeager the book of pictures to review, he "went into [his] office which was the adjoining room." (*Id.* at p. 629) Yeager approached Martin in his office after a while and told Martin that he had not been able to identify the perpetrator in the books of pictures. (*Id.* at p. 630)

Martin contacted Yeager again on February 15, 1987 and asked him to come to the police station to review a photographic lineup Martin had prepared which contained a picture of Petitioner, who had at that point become the prime suspect in the January 29, 1987 aggravated robbery investigation. (*Id.* at pp. 631–32) On February 16, 1987, Yeager identified defendant's picture from the photographic lineup as the perpetrator of the robbery. (*Id.* at pp. 633–35; People's Ex. B) The fact that Petitioner was a suspect in the robbery was not conveyed to Yeager at any time prior to Yeager's identification of defendant on February 15, 1987. (*Id.* at pp. 630, 635–36)

Martin testified on direct examination that when he showed Yeager the books of pictures on February 3, 1987, one of the books contained a photograph of the defendant taken in March 1985. (*Id.* at p. 637) The 1985 picture had been marked for identification as Defendant's Exhibit 1. (*Id.*) Martin testified that Yeager did not bring the 1985 photograph of Petitioner to Martin's attention on February 3, 1987. (*Id.* at pp. 637–38) The prosecutor then moved for admission of Defendant's Ex. 1. (*Id.* at pp. 638) Defense counsel did not object to the admission of the photograph as long as the DPD number was excised. (*Id.* at pp. 638–39) The court admitted Defendant's Exhibit 1 into evidence, but the exhibit was not published to the jury at that time. (*Id.* at p. 639)

Defense counsel, during cross examination of Martin, elicited a confirmation from Martin of Martin's prior testimony that although a photograph of defendant was included in both the "book of pictures" that Yeager had reviewed on February 3, 1987, and in the photographic lineup that Yeager viewed on February 16, 1987, Yeager had failed to identify defendant's 1985 picture in the "book of pictures" on February 3, 1987. (*Id.* at p. 644)

After the People rested their case, and the jury had left the courtroom, the prosecutor and defense counsel advised the court that they had reached a stipulation that the 1985 photograph of defendant, previously marked and identified as Defendant's Ex. 1, could be "cropped" as long as defendant's face was showing, and that they had further reached a written stipulation regarding Defendant's Ex. 1 that the court should read to the jury. (*Id.* at p. 654) The state trial court described the photograph in reading the parties' stipulation into the record.[2] The trial court stated, for the record, that the 1985 photograph of defendant was a color photograph showing both a front and profile view of the Petitioner. (*Id.* at p. 654) The photograph was altered to excise the bottom portion which contained the date, time and DPD number, so the jury would not see that information. (*Id.* at pp. 654–555). The remainder of the photo, showing the frontal and side view of Petitioner, would be published to the jury as Defendant's Ex. 1A. (*Id.* at p. 655) The rest of the document originally marked as Defendant's Ex. 1 would not be published to the

---

2. The 1985 photograph of defendant that was originally marked as Defendant's Ex. 1 was not provided to this court with the certified copy of the state court record.

jury. (*Id.*) When the jury returned to the courtroom, the trial judge read the written stipulation of the parties to the jury: "1. The photograph of the defendant admitted into evidence as Defendant's Ex. 1A was taken March 9, 1985. 2. The photograph of the defendant in position number 4, on People's Exhibit B was taken February 5, 1987." (*Id.* at p. 656)

Defendant did not testify and the defense called only one witness, a personal friend of Petitioner's, to testify regarding the Petitioner's physical description and appearance on January 23, 1987. (*Id.* at pp. 656–62)

The defense's trial strategy, as evidenced by counsel's closing argument, was to show that the prosecution's case against Petitioner was one of mistaken identity. Counsel emphasized in his closing argument that Yeager had seen defendant's 1985 photograph in the book of pictures on February 3, 1987, but had failed to identify Petitioner as the perpetrator at that time. (*Id.* at p. 682) Counsel suggested to the jury that Yeager had subsequently identified defendant in the photographic lineup because Yeager knew he had seen defendant's face before, even if he was not consciously aware of where or when he had seen it. (*Id.* at p. 683) Counsel also focused on the discrepancies between Yeager's physical description of the perpetrator and the actual physical features of the defendant.

The record shows that defense counsel did not request any cautionary jury instructions with regard to the jurors' consideration of the photographic evidence of the Petitioner, People's Ex. B and Defendant's Ex. 1A.[3]

During jury deliberations, the jurors sent a written request to the court for a transcript of Yeager's testimony so that they could review it. (*Id.* at p. 694). The trial court advised the jurors that they must rely on their memories of Yeager's testimony in reaching a verdict. (*Id.*) The jury later came back with another question: whether the jurors could consider a lesser charge than aggravated robbery. (*Id.* at p. 695). The trial court responded that aggravated robbery was the only charge before the jury. (*Id.*)

## B.

The Colorado Court of Appeals, in addressing Petitioner's contention on direct appeal of his conviction that the trial court had erred in allowing, and his trial counsel had been ineffective in failing to object to, the admission of the photographs of Petitioner, noted that because the photographs showed both a front and profile view of Petitioner, the photographs might be identifiable as mug shots that suggest prior criminal activity and the better practice would have been not to admit the profile views. The Court of Appeals found, however, that the defense strategy at trial, which was apparent to the jury, was to show that the victim had misidentified Petitioner as the perpetrator of the robbery, as evidenced, in part, by the victim's failure to identify Petitioner when the victim initially reviewed books of photographs at the police station which included the 1985 photograph of Petitioner. The Colorado appellate court further found that the photographic lineup, which also included a profile view of defendant, was properly admitted into evidence because the photograph was dated February 5, 1987, a date after the robbery occurred but before Petitioner's trial. The court found that the jury could reasonably conclude from the date that the photograph was the result of defendant's arrest and detention on the charges in the case being tried and not on some other criminal matter. The Court of Appeals therefore determined that the admission of the photographs did not constitute reversible error.

With regard to the ineffective assistance of counsel claim, the Colorado Court of Appeals found that counsel was "aware of the law governing admission of photographs and knew the potential damage that admission could cause," but that counsel responded to the problem by having the mug shots and books referred to as "photographs" and "books of pictures." (R. Vol. I at p. 216) The Court of Appeals further found that defense counsel's strategy to introduce the 1985 photograph had a sound evidentiary basis: if defendant was the perpetrator, then the vic-

---

**3.** A cautionary instruction would be an instruction to the jury that the photographs had been taken and introduced into evidence for identifica-tion purposes only. *See People v. Thorpe,* 570 P.2d at 1315.

tim should have identified defendant's 1985 photograph in the books of pictures which the victim initially reviewed on February 3, 1987. The Court of Appeals concluded under *Strickland* that defendant counsel's representation of the defendant had not been constitutionally deficient, *and that defendant had failed to show that the exclusion of the 1985 photograph would have resulted in defendant's acquittal.*

In its later affirmation of the trial court's denial of Petitioner's Rule 35(c) motion, the Colorado Court of Appeals noted that the ineffective assistance of counsel issue had previously been decided on direct appeal, but nevertheless reached the merits of that claim a second time. The Court of Appeals acknowledged that at Petitioner's Rule 35(c) hearing, Petitioner had submitted evidence to the trial court in support of his ineffective assistance of counsel claim that had not been before the Court of Appeals when the appellate court decided Petitioner's direct appeal.[4] The Court of Appeals found, however, that Petitioner had failed to show that the result of his trial would have been different had counsel objected to the introduction of the mug shots, despite whether, at the time of trial, counsel was aware of the law governing admissibility of mug shot evidence as set forth in *Bugarin.*

## C.

The Colorado Court of Appeals twice denied Petitioner's ineffective assistance of

counsel claim on the merits, finding that Petitioner had failed to demonstrate a reasonable probability that he would have been acquitted on the aggravated robbery charge if his trial counsel had objected to the admission of the photographs. After a careful review of the entire state court record, the court finds that Petitioner has failed to show that he is entitled to federal habeas corpus relief.

■ Petitioner asserts that he was prejudiced by the testimony of Denver police officers, during the prosecution's case-in-chief, which suggested to the jury that Petitioner had been involved in unrelated criminal activity. The court disagrees. Contrary to Petitioner's assertion, Officer Davoll did not testify that Petitioner was a suspect in *"another aggravated robbery."* Instead, Davoll testified he received information from another police officer on January 31, 1987 that Petitioner was a possible suspect in a robbery and that Officer Kukaris was "familiar with" Petitioner. Davoll's testimony was stricken by the trial court at defense counsel's request. Defense counsel also moved for a mistrial based on Davoll's testimony which the court denied. The court finds that defense counsel's representation of Petitioner concerning the Davoll testimony was professionally reasonable.[5]

With regard to the admission of the police identification photographs of Petitioner, the state court record shows that, notwithstand-

---

4. At defendant's Rule 35(c) hearing, defendant's trial counsel testified that he was not aware of the law regarding admission of mug shots as set forth in *Bugarin,* that it was not part of his trial strategy to have the mug shots introduced into evidence, and that he was not aware that he could successfully object to the introduction of the mug shots, move for deletion of the profile view or request a cautionary instruction. (R. Vol XI, at p. 6) Counsel testified that had he known of the law in *Bugarin,* he would have moved for exclusion of the photographs and would not have introduced them in his own case. (*Id.* at pp. 8–9) Counsel further clarified that the 1985 photograph of defendant had been marked as a defense exhibit solely for purposes of the motion to suppress hearing and had not been specifically marked as a defense exhibit for trial. (*Id.* at p. 9)

Thomas Hammond, testifying as an expert in criminal defense, stated that it was his expert opinion that trial counsel's failure to object to the introduction or admission of the photographs

fell below accepted standards of practice under the first prong of *Strickland.* (*Id.* at p. 32) Specifically, Hammond testified that there was no benefit to defendant in admitting the 1985 photograph into evidence and that the mug shot conveyed to the jury highly prejudicial prior criminality by defendant. (*Id.* at pp. 27–28)

5. In any event, Davoll's testimony that his partner was "familiar with" the Petitioner is ambiguous and does not convey to the jury that defendant has been involved in unrelated criminal activity. *U.S. v. Taylor,* 605 F.2d 1177, 1179 (10th Cir.1979). Davoll's testimony that he was advised by another officer on January 31, 1987 that Petitioner was a possible suspect in a robbery is also ambiguous. The Yeager robbery occurred on January 29, 1987. The jury could reasonably have concluded that Officer Davoll's testimony referred to the Yeager robbery. Evidence that the defendant was a suspect in the crime for which he is being tried is not indicative of unrelated criminal activity.

ing defense counsel's admitted lack of familiarity with the *Bugarin* cases, counsel was aware of the possible prejudice to Petitioner that would result from the admission of the photographs and took steps to minimize that prejudice. Counsel requested that the mug shots be referred to as photographs and that the mug books be referred to as books of pictures. Counsel also requested that the DPD numbers and dates be excised from the photographs before the photographs were published to the jury. Counsel's requests to the court, which the court granted, mitigated the prejudicial effect of the photographs.

The court finds that counsel's failure to object to Yeager's single reference to "mug books" does not show substandard professional conduct by counsel because it was sound trial strategy to ignore Yeager's slip and not emphasize it to the jury.

The court further finds that the fact that the jury was made aware that the photograph of defendant contained in the photographic array was taken on February 5, 1987 did not indicate unrelated criminal activity by the defendant; the jury could have logically concluded from that date that the photograph was taken subsequent to defendant's arrest for the crime being tried. *See Thatcher*, 638 P.2d at 769 (finding that mug shot photograph is admissible if jury could logically conclude that the photograph was taken in connection with defendant's arrest for the offense being tried). The court is unable to conclude that counsel's treatment of the 1987 photograph was professionally unreasonable.

The most problematic aspect of this case was the admission of the 1985 photograph, which included both a front and profile view of defendant, with no objection from defense counsel. The accompanying testimony by Officer Martin that the photograph had been included in the books of pictures that Yeager had reviewed at the police station on February 3, 1987, with no cautionary instruction by the court that the photograph was being admitted for identification purposes only and did not imply any prior criminal activity by the defendant, could have created an inference that defendant had been involved in criminal activity in 1985. Because the 1985 photograph of Petitioner was not probative of

the prosecution's burden to show that Petitioner was accurately identified by Yeager as the perpetrator of the January 29, 1987 robbery, the trial court would probably have sustained an objection by defense counsel to the admissibility of the 1985 photograph during the prosecution's case-in-chief.

Assuming, however, that defense counsel's failure to object to the admission of the 1985 photograph constituted inadequate legal representation of the Petitioner,[6] Petitioner has still not shown a reasonable probability that he would have been acquitted if the 1985 photograph had been excluded in its entirety. The evidence before the jury without the 1985 photograph supported defendant's conviction for aggravated robbery. The victim was able to make a positive identification of Petitioner as the perpetrator from the photographic array. As stated previously, the photographic array which included a February 5, 1987 photograph of Petitioner did not convey to the jury that defendant was involved in unrelated criminal activity because the jurors could reasonably conclude from the date of the photograph that the photograph was taken as a result of Petitioner's arrest and detention in the Yeager robbery.

The Colorado Court of Appeals, in reviewing the trial court's denial of Petitioner's Rule 35(c) motion, emphasized that the jury convicted Petitioner of the aggravated robbery after hearing Yeager's testimony that he initially was unable to identify the perpetrator from books of pictures, but was later able to make a positive identification of Petitioner from the photographic array. The Court of Appeals' conclusion that Petitioner failed to show a reasonable probability that but for counsel's failure to object to the admission of the 1985 photograph, he would have been acquitted, is supported by the totality of the evidence presented to the trial court, was not an unreasonable application of *Strickland*, and will therefore not be disturbed by this court on habeas corpus review.

### IV. Recommendation

For the reasons set forth above, the court recommends that the Application for a Writ

---

6. *See* footnote 4, *supra.*

of Habeas Corpus, filed by Kenneth Cobbin on October 20, 1997, be **DENIED**.

The court further recommends that the Motion for Appointment of Counsel [filed May 8, 1998], the Motion for a Briefing Schedule and/or Evidentiary Hearing [filed May 8, 1998], and Petitioner's Request for Copy of State Court Record [filed October 1, 1998] be **DENIED**.

Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation as provided by Rules of court. The district court judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.